UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ORBIT ONE COMMUNICATIONS, INC., et al | MISC. ACTION |
| VERSUS | NO. 09-2853 |
| NUMEREX, CORPORATION, et al | SECTION "C" (3) |

      The matter of plaintiff/counter-defendants' Motion to Compel (Doc. #1) came on for hearing before the undersigned Magistrate Judge. Present or participating were Justin Sher on behalf of Gary Naden and Scott Rosenzweig (movants), Mark A. Cunningham on behalf of non-party Axonn, L.L.C., and Emily A. Kim on behalf of Numerex, Inc. For reasons set forth hereinbelow, the motion is denied in large part, but to the extent the non-party Axonn, L.L.C., seeks reimbursement for the expenses it has incurred in cooperating with the subpoena requests and is continuing to do so, Axonn's request is granted.

**Procedural Background**

      This motion arises out of consolidated proceedings pending in the Southern District of New York synopsized below.

1

MJSTAR(00:09)

*Orbit One Communications, Inc., and David Ronsen v. Numerex Corp.*[1]

Orbit One and David Ronsen sued Numerex in the Southern District of New York for violating Numerex's Aquisition agreement regarding Orbit and David Ronsen's (Ronsen) Employment agreement. Under the terms of the employment agreement Ronsen was entitled to full payment of the "Earn Out" regardless of the performance of the satellite division. Numerex filed counterclaims alleging that Ronsen breached its fiduciary duty to Numerex by sending letters to senior management that were critical of the management of the satellite division.

*Numerex, Corp. v. R&N*[2]

After Rosenzweig and Nadin (R & N) resigned, Numerex filed a separate suit against them individually for breach of their fiduciary duties to Numerex and breach of their Employment Agreements by helping Ronsen write letters to Numerex senior management that were critical of the management of the satellite division. Numerex also amended its complaint to seek a declaration that the non-compete agreements in R & N's employment contracts were enforceable against them for a period of two-years. R & N submit that the non-compete provisions of their contracts would only be applicable if they had been terminated for cause. Both of the aforesaid cases were consolidated in the Southern District of New York.

*Gary Naden, et al v. Numerex*[3]

On September 10, 2008, R&N, Ronsen, Orbit One and a newly formed entity called Lava Lake Technologies, LLC filed an action in Montana seeking a declaration that the non-compete

---

[1] *See* Numerex Corp. Exhibit "3".

[2] *See* Numerex Exhibit "4".

[3] *See* Numerex Exhibit "5".

provisions in their employment agreements with Numerex were unenforceable.  They also sought a preliminary injunction against Numerex.  R&N and Ronsen allege that the provisions are anti-competitive and they were not compensated for giving up their right to earn a living in the satellite communications industry.

Numerex succeeded in having the action in Montana transferred to the Southern District of New York.  The preliminary injunction hearing took place before Judge Kaplan in the Southern District of New York on January 7, 2009.  A week before the hearing, Numerex informed R & N that it intended to call Paul DiBella, Chairman of Axonn's Board of Directors.  Thereafter, R & N faxed a subpoena to Axonn seeking documents.  Axonn did not immediately respond and Numerex ultimately did not call DiBella as a witness.

On January 30, 2009, Numerex filed counterclaims in the transferred case (not raised in the other two cases) that R&N participated in a "multi-million dollar fraud" by failing to disclose certain facts relating to an intellectual property dispute between Orbit and Axonn prior to the close of Numerex's Acquisition of Orbit.[4]  R&N seek information so that they can demonstrate that they did not withhold any material information and that, regardless, Numerex conducted its own due diligence and was aware of the disputes between Axonn and Orbit One.  More specifically, Numerex charged Orbit One with failing to disclose a series of communications between Axonn and Orbit One during the period of February 2007 through July 2007.[5]

R&N contend that documents in Axonn's possession are likely to reveal that Axonn's pre-acquisition threat of litigation against them is baseless and that Axonn never seriously

---

[4] *See* Numerex Exh. "6".

[5] *See id.,* at ¶¶ 49-75.

intended to bring an action.  Additionally, R&N submits that the documents will support their defense that they disclosed all information material to Numerex's acquisition of Orbit regarding their relationship with Axonn and that Numerex communicated directly with Axonn regarding any potential claims it had against R&N, such that Numerex cannot be said to have reasonably relied on representations by Rosenzweig, Naden or Ronsen.

**Factual Background**

In 2006, Nadin resigned as Vice President of Engineering for Axonn (a communication technology company based in Covington, La.) and accepted a job with Orbit One (a satellite communications reseller based in Bozeman, Montana).  R & N submit that Axonn reacted by falsely accusing Naden of violating a non-compete agreement and by falsely accusing Orbit One of violating a non-solicitation agreement.  Nothwithstanding the dispute, Axonn never sued Naden and it continued to do business with Orbit One following Naden's departure.

In April of 2007, Axonn provided a letter to Orbit One in which Axonn stated it had no intention of suing Orbit One.  During the same time frame, discussions commenced by and between Numerex and Orbit One concerning a potential acquisition.  In the course of negotiations, Orbit One provided all material information to Numerex concerning Orbit One and Naden's past disputes with Axonn and, in multiple oral and written communications with Numerex, fully disclosed Axonn's threats of litigation.  Moreover, shortly before signing the agreement to acquire Orbit One, Numerex's CEO, Stratton Nicolaides, met directly with Paul DiBella, Axonn's chairman, to discuss in detail Axonn's relationship with Orbit One.

As of July 31, 2007, Numerex (a wireless communications company based in Atlanta, Ga.) acquired the assets of Orbit One.  R&N had been employees and shareholders of Orbit One

4

prior to the acquisition. Although Orbit One discontinued its operations after the sale of assets, R&N submit that they remain shareholders of Orbit One and are entitled to share in the "Earn Out" payments, which are tied to the performance of the satellite business. David Rosen was President of Orbit One and remains its majority shareholder.

Upon acquiring the assets of Orbit One, Numerex agreed to hire Rosenzweig as Vice-President of Business Development, Naden as Chief Technology Officer and Ronsen as President of the satellite division. Each of their relationships with Numerex was governed by a Severance and Non-Competition Agreement. In the event of the termination or resignation, each would be entitled to certain benefits that vary according to the circumstances.

On August 23, 2007, Numerex received a letter from Axonn in which Axonn accused Numerex of using Axonn's confidential information. Movants submit that Numerex did not inform R&N, Ronsen or Orbit One and at no point did they accuse them of hiding any facts concerning this potential dispute. It was not raised until a year and a half later in New York litigation.

After the acquisition deal closed, R&N submit that it became clear to them that Numerex was not providing promised resources and support. Administrative problems plagued them, such as Ronsen being President but not having the power to authorize more than $500 in expenditures. R&N and Ronsen's efforts to address the situation failed and all three resigned during June and July of 2008.

**The Subpoenas and Axonn's Objections**

On December 31, 2008, R&N faxed a subpoena to Axonn having just learned that Orbit One intended to call Paul DiBella as a witness at the aforementioned preliminary injunction

5

hearing. For the period of from June 26, 2006 to present, the subpoena seeks production of the following:

> (A) Documents concerning any ANALYSIS OF INFRINGMENT OF AXONN's INTELLECTUAL PROPERTY RIGHTS in any product or device called the Satellite Transmitter, STX, STX-2, AXTracker or MMT by Numerex, Orbit One, Inc., Ronsenzweig, Naden or Ronsen. (Subpoena Req. # 2).
>
> (B) Documents concerning potential or THREATENED CLAIMS BY AXONN against Numerex, Orbit One, Inc. Rosenzweig, Naden or Ronsen. (Subpoena Req. #3).
>
> ( C) Documents concerning negotiation to settle any of Axonn's potential or threatened claims against the aforementioned (Subpoena Req. #5).
>
> (D) Any schedule, log or timeline reflecting meetings between Axonn and Numerex personnel. (Subpoena Req. #7).[6]

Axonn initially objected to the faxed subpoena on the basis of improper service, counsel for Axonn having indicated he was not authorized to accept service on behalf of Axonn. Subsequently, R&N served Axonn with a subpoena in Louisiana and served DiBella with a similar subpoena in his office in Atlanta, GA. In addition to documents, the subpoena addressed to DiBella called for his deposition.

Axonn's January 27, 2009 response sets forth the following objections, to wit: (1) Privilege; (2) Relevance; (3) Confidential/Proprietary Information; and (4) Undue burden and expense in that the communications sought from Axonn could be obtained from parties to the litigation.[7]

On February 10, 2009, counsel for R&N participated in a telephone conference with counsel for Numerex and counsel for Axonn. Numerex acknowledged that certain

---

[6] *See* Numerex Exh. "1".

[7] *See* Numerex Exh. "7".

communications between Axonn and Numerex relating to Axonn's potential claims were relevant to Numerex's claims against Orbit One. R&N's counsel indicated a willingness to consider paying reasonable expenses associated with non-party Axonn's compliance with the subpoena, although no agreement was reached as to reimbursement. Axonn did not make DiBella available on Feb 9, 2009 as initially requested[8] but did in fact make DiBella available in New Orleans on February 25-26, 2009 at Axonn's counsel's office.[9]

**Discovery Sought**

R&N contends that, as of the date of the hearing, Axonn had refused to produce any documents from its own files and simply produced documents that had already been produced by parties to the litigation in the Southern District of New York.

R&N seeks Axonn's own analysis of its copyright claims and submit this is necessary to prove that Axonn's claims lack merit and thus negate Numerex's claim that it was damaged by the alleged failure of R&N to disclose any potential threat of litigation. R & N further contend that this information will prove helpful in defending against Numerex's claim that R&N are habitual thieves of intellectual property.

In addition R&N seek communications between Numerex and Axonn regarding negotiations addressing the value of Axonn's potential claims. R&N targeted internal communications, which may not have been shared with Numerex, that discuss and summarize communications between Axonn and Numerex.

R&N submit that their subpoena duces tecum is sufficiently narrowly tailored and

---

[8]*See* Numerex Exh. "8".

[9]*See* Numerex Exhs. "9" and "10"; Affidavit of Mark A. Cunningham at ¶¶ 6-8.

specific and seeks information highly relevant to Numerex's counter claims against them. R&N seek seven (7) categories of documents generated over a two and half year period. R&N contends that Axonn has made no showing of substantial burden.

To the contrary, Axonn submits that it has incurred approximately $6,000.00 in attorney's fees and costs responding to subpoenas and preparing Mr. Dibella for his deposition. Moreover, Axonn maintains that this number could be easily doubled if Axonn is required to conduct additional document searches and to prepare privilege logs. Moreover, Axonn submits that it has fully cooperated in providing relevant and non-privileged materials and that R & N's counsel rejected Axonn's proposed compromise and has made no counter-offer or commitment to reimburse any of Axonn's expenses.[10]

## Analysis

Fed.R.Civ.P. 45(c)(1) provides that:

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction-which may include ... reasonable attorney's fees-on a party or attorney who fails to comply.

*Id.* A person who is commanded to produce documents in response to a subpoena may serve written objections. Fed. R. Civ. P. 45( c)(2)(B). The serving party may move the issuing court for an order compelling production. *Id*. "[T]he order must protect a person who is neither a party nor a party's officer from significant expenses resulting from compliance." Fed. R. Civ. P. 45(c)(2)(B)(ii).

---

[10] *See* Axonn's Memorandum in Opposition to Motion to Compel; Affidavit of Mark Cunningham at ¶¶ 5-6.

> A nonparty required to produce documents or materials is protected against significant expense resulting from involuntary assistance to the court.... The court is not required to fix the costs in advance of production, although this will often be the most satisfactory accommodation to protect the party seeking discovery from excessive costs. In some instances, it may be preferable to leave uncertain costs to be determined after the materials have been produced, provided the risk of uncertainty is fully disclosed to the discovering party.

Fed. Rule Civ. P. 45( c) Advisory Committee's Note, 1991 amendments. *See also* 9A Wright and Miller, Federal Practice and Procedure § 2463 (3rd ed. 2008).

The January 14, 2009 SDT served on Axonn seeking production of documents on January 7, 2009 – seven days prior to the date of service -- was facially invalid and thus unenforceable. Facsimile service was improper in that it was directed to DiBella, who was neither an officer or director at the time of service. Counsel for Axonn objected accordingly on January 6, 2009. Axonn also served written objections to the subpoena requesting the same documents from Paul Dibella. Most notably, when the aforesaid subpoena was served, Numerex had not yet asserted a counterclaim against Orbit One or its principals. The counterclaim which is the focus of R&N's subpoena was filed two days after Axonn asserted written objections to the subpoena.

On February 25, 2009, Axonn made Paul DiBella available for deposition. DiBella was the point person for discussions with Orbit One and Numerex. Axonn also produced responsive documentation for the relevant time period set forth in R&N's counterclaim, which was less than the 2 1/2 year period addressed in the SDT issued to Axonn.

R & N have failed to comply with their obligations under Fed. R. Civ. P. 45(c)(1) to avoid imposing undue burden and expense on a non-party (in this case Axonn). Moreover, under Fed. R. Civ. P. 45( c)(2)(B), Axonn is entitled to protection from significant expense

9

which it has already incurred in cooperating with R & N as more fully explained below.

Despite the infirmities in the subpoena and notwithstanding its objections, Axonn went out of its way to cooperate with R&N's discovery efforts. As opposed to a handful of e-mails, Axonn produced hundreds. Additionally, Axonn has agreed to produce all other communications between itself, Orbit or Numerex for the relevant time period (Feb., 2007 through July, 2007) and that is all that is required under the rules. Moreover, DiBella (Axonn's former chairman and point person for the issues addressed by the subject subpoenas) was made available for an extended deposition on February 25-26, 2009.

As to Axonn's requests for costs and expenses incurred in connection with the subpoenas, the Court finds that it has incurred significant expenses. More specifically: (1) the subpoenas served by counsel of R &N imposed expenses on Axonn, which is a nonparty; (2) $6,000 plus in fees and expenses is significant; (3) the costs sought by Axonn were not fixed in advance of production and the deposition of Dibella through no fault of Axonn; and (4) the risk of the costs that Axonn would seek reimbursement for was fully disclosed to counsel for R &N, however, R & N refused to pay any such costs and expenses incurred by Axonn. Under these circumstances, Axonn's reasonable costs of production should be shifted to the plaintiffs, R & N.

For all of the reasons set forth above and below and considering Axonn's agreement to produce responsive external communications between itself and Orbit One and Numerex for the relevant time frame, R & N's Motion to Compel (Doc. #1) is DENIED and/or DISMISSED AS MOOT all as more particularly set forth below. Accordingly,

**IT IS ORDERED**:

(1) As to Document Categories Nos. 1, 5, and 6, the Motion to Compel is dismissed as

moot.[11]

(2) As to Document Category No. 2, seeking analysis of the of Axonn's own intellectual property rights, Axonn's privilege claims (attorney-client/work product) are SUSTAINED and, in any event, the Motion to Compel is DISMISSED AS MOOT based on DiBella's testimony that no analysis had been undertaken to determine whether products recently manufactured by Orbit One infringe any of Axonn's patents.[12]

(3) As to Document Categories Nos. 3 and 4 regarding "Potential and Threatened Claims" Axonn's objections of overly broad and unduly burdensome[13] are SUSTAINED.[14]

(4) To the extent that R & N seek discovery of documentation beyond the relevant time frame set forth in Numerex Corporation's counterclaim and recovery of attorney's fees/costs they have incurred in prosecuting the instant Motion to Compel, the subject Motion to Compel is DENIED in pertinent part.

**IT IS FURTHER ORDERED** that plaintiffs shall reimburse the *significant* expenses and costs that Axonn has incurred in its efforts to comply with the subject subpoenas, which

---

[11] DiBella testified that there were agreements or transactions and thay Numerex and Axonn have not had negotiations. There are no documents responsive to these requests. *See* Affidavit of Mark A. Cunningham at ¶ 8.

[12] DiBella testified that Axonn had not undertaken an analysis to determine whether products recently manufactured by Orbit One infringe patents issued to Axonn. *See id.*

[13] R&N primarily seeks external communications Axonn for the stated reason that Numerex may have lost some, indicating that this non-party discovery is propounded as some form of cross-check on discovery by and between the parties. Movants have not made the requisite showing to necessary to justify such costly and burdensome discovery addressed to a non-party. Moreover Axonn has agreed to produce external communications for the *appropriate* time frame.

[14] *See id.* at ¶ 9 (re costs/expenses incurred in connection with compliance).

Axonn attempted to have fixed in advance of the production but plaintiffs (Rosenzweig and Nader) refused to do so.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**